**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald CARABBIA, Defendant-Appellant.**

**No. CR 63–334.**

United States District Court
N. D. Ohio, E. D.

May 26, 1967.

Frank Moran, John J. Kane, Jr., Cleveland, Ohio, for defendant.

William S. Lynch, Washington, D. C., Atty. for the Government.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BATTISTI, District Judge.

Pursuant to an order entered by the Sixth Circuit Court of Appeals on February 23, 1967, this Court ordered that a hearing be commenced on April 5, 1967, to investigate all aspects of the Government's use of electronic listening equipment in the premises of the defendant-appellant. Prior to the commencement of this hearing, namely on March 24, 1967, the Government presented to the Court the original and one copy of certain logs which it represented to be the complete and only original records of what was overheard by the electronic surveillance which was disclosed by the Government to the Sixth Circuit Court of Appeals.[1] On the instruction of the

---

1. The logs were presented to the Court pursuant to a request made at an informal pretrial conference held on March 24, 1967. Counsel for the defendant states that the Court "refused" to rule on certain discovery requests made at that conference. It should be pointed out, however, that the Court did not "refuse" to rule on counsel's requests; rather, there was general agreement that a ruling on the discovery requests might best be deferred until counsel for the defendant had an opportunity to review the logs.

Court, an Assistant United States Attorney delivered a copy of these logs to defense counsel on March 29, 1967, under a protective order which permitted the disclosure of the contents thereof by defense counsel only to the extent that they in good faith believed it necessary in order to prepare for the April 5, 1967, hearing. Defense counsel, evidently believing the protective order to be too restrictive, refused to accept the logs at that time.[2] On April 5, 1967, the Court, in order to expedite the hearing, revoked the protective order and, once again, had a copy of the logs delivered to defense counsel.

On the basis of the evidence introduced at the hearing conducted from April 5, 1967, to April 10, 1967, the Court makes the following findings of fact.

1. The listening device involved in the electronic surveillance of the defendant was a battery powered microphone installed on January 22, 1962, at the Modern News Center, 620 Youngstown-Poland Road, Struthers, Ohio, and connected by means of commercial telephone lines to the Youngstown, Ohio office of the Federal Bureau of Investigation (hereafter FBI). Several days after its installation, when the connection with the commercial telephone lines had been completed, the device was monitored on a spot check basis. Commencing January 31, 1962, logs were kept of the monitoring of the conversations overheard by means of the device. Logs were kept until March 19, 1962, and the device was discontinued on March 22, 1962.

2. The procedure employed by the FBI in monitoring the aforesaid device was substantially as follows: Agents of the FBI were assigned to the FBI's Youngstown Office to listen through earphones to the sounds which were emanating from the Struthers, Ohio address. They were directed to make entries in their logs of the discernible and intelligible conversations overheard during the monitoring period. The device was monitored at random times when personnel were available. The log entries would consist, as far as possible, of a verbatim transcription of that which was overheard. These logs were and are the only records of the conversations which were listened to by the agents. No tapes or sound recordings were made.

3. The Government has produced all of the logs which were made pursuant to the above-described monitoring procedure.

4. The Government provided and made available all of the individuals who participated in the monitoring of the above-described device or had anything to do with the listening process during the pertinent period. On the basis of the testimony of these individuals, the Court finds that all the information obtained by means of the monitoring device between January 31 and March 19, 1962, is reflected in the logs presented to the Court. No records were made in connection with the spot check monitoring which occurred prior to January 31, 1962.

5. Defendant Ronald Carabbia did not participate in any of the conversations which were overheard or listened to by the FBI.

6. The only information which was obtained by the Internal Revenue Service as a result of the FBI's monitoring of the premises of the defendant is set out in Court's Exhibits 4, 4a and 4b. The Internal Revenue special agent who investigated the charges which led to this

2. The Court is of the opinion that defense counsel acted unreasonably and arbitrarily in refusing to accept the logs. Even assuming that there was reason to believe that the protective order was unduly restrictive—a position which appears to be entirely without merit—the soundest course of action would have been to accept the logs, study them carefully, and thereafter seek a modification of the protective order in the event counsel thought it necessary. The Court, since it had not reviewed the logs before turning them over, obviously had no way of knowing what they contained by way of relevant information. When counsel argues, as he did in this case, that the order might restrict even his perusal of the logs, he argues outside the realm of reason.

prosecution received no investigative leads to this prosecution from the electronic device installed at the Modern News Center, 620 Youngstown-Poland Road, Struthers, Ohio, and he did not discuss this case or information obtained from the monitoring with any agent of the FBI.

7. The information contained in the logs is totally irrelevant to any of the issues raised during the trial.

8. None of the conversations overheard during the spot check monitoring which occurred prior to January 31, 1962, were relevant to any of the issues raised during the trial.

9. Nothing overheard or disseminated from the listening device did or could have led, either directly or indirectly, to any evidence introduced in the course of the prosecution of this case.

10. The Government disclosed the electronic surveillance of the defendant's premises in accordance with the policy set forth in the Government's supplemental memorandum to the Supreme Court in Schipani v. United States, 385 U.S. 372, 87 S.Ct. 533, 17 L.Ed.2d 428 (October Term 1966). Implicit in the Government's disclosure of such surveillance is a representation on the part of the Government that there was no other electronic surveillance of the defendant. At the hearing, the Internal Revenue special agent who had charge of the investigation which lead to this prosecution testified that there was no other electronic surveillance of Mr. Carabbia. The Court finds that the only electronic surveillance of the defendant was that discussed in findings of fact Nos. 1 through 9.[3]

## CONCLUSIONS OF LAW

The Court concludes, upon an inquiry into all aspects of the Government's use of electronic equipment in the premises of the defendant that:

 1. Since none of the information overheard by the monitoring of the microphone at the Modern News Center, Struthers, Ohio was used as evidence or as leads to evidence admitted at the trial, there would be no basis for suppressing any of the evidence which was used in the prosecution of this case.

2. There is no basis for ordering a new trial in this case and the judgment of conviction should stand.

---

3. Counsel for Mr. Carabbia attempted during the course of the hearing to undertake a widescale, independent investigation of various governmental agencies in an effort to uncover further electronic surveillance. Taking into consideration the language of the Sixth Circuit Court of Appeals' order and the circumstances set out in this finding of fact, the Court deemed that such efforts on the part of defense counsel constituted nothing more than an unwarranted stab in the dark and, therefore, did not allow counsel to pursue the same.